300016224

ORIGINAL

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

FILED-USDC-NDTX-DA
'25 FEB 7 AM10:55
KB

| | |
|---|---|
| **ADEAN HILL, JR,** | § |
| **Plaintiff,** | § |
| **v.** | § |
| **TOBIAS & ASSOCIATES, dba GETMEHEALTHCARE,** a Florida Limited Liability Company and **MICHAEL TOBIAS** | § |
| **Defendant.** | § |

3-25CV0307-D

## PLAINTIFF'S ORIGINAL COMPLAINT

### PARTIES

1. Plaintiff ADEAN HILL ("Plaintiff") is a natural person, a resident of the Northern District of Texas, and was present in Texas for all calls, in this case in Ellis County, Texas.

2. Defendant TOBIAS & ASSOCIATES dba "GetMeHealthcare" ("GMHC" or "Defendant") is a limited liability company organized and existing under the laws of Florida. Tobias can be served via registered agent Michael Tobias, 123 NW 13th St., 101, Boca Raton, Florida 33432.

3. Defendant MICHAEL TOBIAS ("Tobias") is the principal owner and operator of Defendant GMHC, directed the phone calls be made, and can be served at 123 NW 13th St., 101, Boca Raton, Florida 33432.

### JURISDICTION AND VENUE

4. Jurisdiction. This Court has federal-question subject matter jurisdiction over Plaintiff's

TCPA claims pursuant to 28 U.S.C. § 1331 because the TCPA is a federal statute. *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012).

5. This Court has specific personal jurisdiction over Defendants because Defendants purposefully availed itself to the State of Texas and to this District, and there is a sufficient relationship between Defendants' purposeful contacts with Texas and the litigation. Defendant purposefully sent calls into Texas despite having no business relationship with Plaintiff.

a. Defendants target Texas when marketing insurance services and products and regularly conducts business in this District, including telephone solicitation.

b. Defendants purposefully sent phone calls to Plaintiff's Dallas area phone number with area code 214 to generate leads for Defendant.

c. Defendants purposefully spoofed Texas area code phone numbers when placing calls to Plaintiff.

d. Defendant Tobias personally instructed the phone calls be placed to Texas residents, including the phone calls placed to Plaintiff.

e. The purposeful calls to Texas injured Plaintiff in Texas, creating a causal link among Defendants, the forum, and the litigation exceeding the non-causal affiliation sufficient to support personal specific jurisdiction. *See Ford Motor Co. v Mont. Eight Jud. Dist. Ct.*, 141 S. Ct. 1017 (2021).

6. Venue. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1)-(2) because a substantial part of the events giving rise to the claims—the calls and sale of goods and services directed at Texas residents, including the Plaintiff—occurred in this District and because the Plaintiff resides in this District. He was residing in the Northern District of Texas when he received a substantial, if not every phone call from Defendants, which is the subject matter of

this lawsuit.

7. This Court has venue over Defendants because the calls at issue were sent by or on behalf of the above-named Defendants to Plaintiff, a Texas resident.

**THE TELEPHONE CONSUMER PROTECTION ACT**

**OF 1991, 47 U.S.C. § 227**

8. In 1991, Congress enacted the TCPA to restrict the use of sophisticated telemarketing equipment that could target millions of consumers *en masse*. Congress found that these calls were not only a nuisance and an invasion of privacy to consumers specifically but were also a threat to interstate commerce generally. *See* S. Rep. No. 102-178, at 2-3 (1991), as reprinted in 1991 U.S.C.C.A.N. 1968, 1969-71.

9. The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system ('ATDS") or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii).

10. The TCPA makes it unlawful "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes, is made solely pursuant to the collection of a debt owed to or guaranteed by the United States or is exempted by rule or order" of the Federal Communication Commission ("FCC"). 47 U.S.C. § 227(b)(1)(B).

11. The TCPA provides a private cause of action to persons who receive calls in violation of § 227(b). 47 U.S.C. § 227(b)(3).

12. Separately, the TCPA bans telemarketing calls without a do-not-call policy available

upon demand. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(d)(1).[1]

13. The TCPA provides a private cause of action to persons who receive calls in violation of § 227(c) or a regulation promulgated thereunder. 47 U.S.C. § 227(c)(5).

14. According to findings of the FCC, the agency vested by Congress with authority to issue regulations implementing the TCPA, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls and can be costly and inconvenient.

15. The FCC also recognizes that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, 14115 ¶ 165 (2003).

16. The FCC requires "prior express written consent" for all autodialed or prerecorded telemarketing robocalls to wireless numbers and residential lines. In particular:[A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received clear and conspicuous disclosure of the consequences of providing the requested consent, *i.e.*, that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates. In addition, the written agreement must be obtained without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.

17. *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 FCC Rcd. 1830, 1844 ¶ 33 (2012) (footnote and internal quotation marks omitted). FCC regulations "generally establish that the party on whose behalf a solicitation is made bears

---

[1] *See* Code of Federal Regulations, Title 47, Parts 40 to 60, at 425 (2017) (codifying a June 26, 2003 FCC order).

ultimate responsibility for any violations." *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

18. The FCC confirmed this principle in 2013, when it explained that "a seller … may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *In the Matter of the Joint Petition Filed by Dish Network, LLC*, 28 FCC Rcd. 6574, 6574 ¶ 1 (2013).

19. Under the TCPA, a text message is a call. *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 951 – 52 (9th Cir. 2009).

20. A corporate officer involved in the telemarketing at issue may be personally liable under the TCPA. *E.g.*, *Jackson Five Star Catering, Inc. v. Beason*, Case No. 10-10010, 2013 U.S. Dist. LEXIS 159985, at *10 (E.D. Mich. Nov. 8, 2013) ("[M]any courts have held that corporate actors can be individually liable for violating the TCPA where they had direct, personal participation in or personally authorized the conduct found to have violated the statute." (internal quotation marks omitted)); *Maryland v. Universal Elections*, 787 F. Supp. 2d 408, 415 – 16 (D. Md. 2011) ("If an individual acting on behalf of a corporation could avoid individual liability, the TCPA would lose much of its force.").

**FACTUAL ALLEGATIONS**

21. Plaintiff received at least 37 phone calls from Defendants to his personal cell phone soliciting health insurance.

22. On December 13, 2024, Plaintiff received a phone call that displayed 773-906-9552 on Plaintiff's caller identification. The phone call resulted in a voicemail containing a pre-recorded message being left on Plaintiff's cell phone.

23. The phone call in paragraph twenty-two stated, "Today, on Friday, December 13, pause

underscore, one underscore F. Hi, this is Monica from the health care assistance program. This is a critical alert…" Plaintiff pressed one and was connected to an agent.

24. The agent in paragraph 23 said, "This is Ella. I'm actually with 'Health Advisors' on a recorded line." Ella solicited Plaintiff for health insurance and then in-house transferred Plaintiff to a "licensed agent."

25. Plaintiff was connected to "Jarrod." Jarrod finished the enrollment and sent him a "Get Me Healthcare" contract via email at 12:52 PM, email address: help@getmehealthcare.com.

26. On December 23, 2024, at 9:58 AM, Plaintiff received a phone call that displayed 539-937-1115 on Plaintiffs caller identification. The phone call resulted in a voicemail containing a pre-recorded message being left on Plaintiff's cell phone. The pre-recorded message instructed Plaintiff to call back phone number 833-867-3774. Plaintiff called back 833-867-3774 as part of investigation to ascertain who was responsible for making the soliciting calls to his cellular phone. Plaintiff was connected to "Ana from Health Advisors" and issued a DNC Request at the end of the phone call.

27. On January 2, 2025, Plaintiff received a phone call that displayed 801-640-7900 on Plaintiffs caller identification. The phone call resulted in a voicemail containing a pre-recorded message being left on Plaintiff's cell phone. The pre-recorded message instructed Plaintiff to call back phone number 833-867-3774.

28. On January 3, 2025, Plaintiff received a phone call that displayed 424-966-6026 on Plaintiffs caller identification. The phone call resulted in a voicemail containing a pre-recorded message being left on Plaintiff's cell phone. The pre-recorded message instructed Plaintiff to call back phone number 833-867-3774.

29. On January 3, 2025, Plaintiff received a phone call that displayed 984-207-9409 on

Plaintiff's caller identification. The phone call resulted in a voicemail containing a pre-recorded message being left on Plaintiff's cell phone. The pre-recorded message instructed Plaintiff to call back phone number 833-867-3774.

30. On January 27, 2025, Plaintiff received a phone call that displayed 916-977-9914 on Plaintiff's caller identification. The phone call resulted in a voicemail containing a pre-recorded message being left on Plaintiff's cell phone. The pre-recorded message instructed Plaintiff to call back phone number 833-867-3774.

31. On January 27, 2025, Plaintiff received a phone call that displayed 740-999-7154 on Plaintiff's caller identification. The phone call resulted in a voicemail containing a pre-recorded message being left on Plaintiff's cell phone. The pre-recorded message instructed Plaintiff to call back phone number 833-867-3774.

32. On January 30, 2025, Plaintiff received a phone call that displayed 608-946-3551 on Plaintiff's caller identification. The phone call resulted in a voicemail containing a pre-recorded message being left on Plaintiff's cell phone. The pre-recorded message instructed Plaintiff to call back phone number 833-867-3774.

33. Plaintiff delivered at least twenty-eight (28) Do-Not-Call ("DNC") requests to Defendants.

34. At all times relevant hereto, Plaintiff was the subscriber of the personal telephone number ending in 6388.

35. Plaintiff did not have any business relationship with Defendants before any of the phone calls alleged in this Complaint.

36. Plaintiff did not consent to any of the phone calls alleged in this Complaint.

**DO NOT CALL REQUESTS**

37. DNC Request #1: On December 23, 2024, at 1:04 PM, Plaintiff received a phone call from "Ashley" from Health Advisors. Plaintiff responded with, "I don't want to receive any more calls from Health Advisors."

38. DNC Request #2: On December 23, 2024, at 1:08 PM, Plaintiff received a phone call from "Monique" with Health Advisors. Plaintiff responded with, "I do not want anymore calls from Health Advisors."

39. DNC Request #3: On December 23, 2024, at 3:20 PM, Plaintiff received a phone call from "Monique" from Health Advisors. Plaintiff responded with, "I don't want anymore calls from Health Advisors."

40. DNC Request #4: On December 23, 2024, at 3:29 PM, Plaintiff received a phone call from "Logan" with Health Advisors. Plaintiff responded with, "I am not interested. Please don't call back."

41. DNC Request #5: On December 23, 2024, at 5:25 PM, Plaintiff received a phone call from "Ash" from Health Advisors. Plaintiff responded with, "I do not authorize you to call me again. I do not want to receive anymore calls from Health Advisors."

42. DNC Request #6: On December 26, 2024, at 5:00 PM, Plaintiff received a phone call from "Paola" from Health Advisors. Plaintiff responded with, "I told them I did not want calls anymore. Please do not call me anymore."

43. DNC Request #7: On December 26, 2024, at 5:35 PM, Plaintiff received a phone call from "Jane" from Health Advisors. Plaintiff responded with, "Yes ma'am, I have told you guys multiple times to not call me anymore, or I am going to file charges."

44. DNC Request #8: On December 26, 2024, at 5:38 PM, Plaintiff received a phone call from "Matt" from Health Advisors. Plaintiff responded with, "I do not want to be called again,

and I want to press charges if I get called again. I do not authorize anymore phone calls."

45. DNC Request #9: On December 26, 2024, at 5:49 PM, Plaintiff received a phone call from "Mary" from Health Advisors. Plaintiff responded with, "I wish to not receive anymore phone calls. Please do not call me anymore, thank you."

46. DNC Request #10: On December 27, 2024, at 10:53 AM, Plaintiff received a phone call from "Cindy" with Health Advisors. Plaintiff responded with, "Can you please not call me again."

47. DNC Request #11: On January 3, 2025, at 12:48 PM, Plaintiff received a phone call from "Sophia" from Health Advisors. Plaintiff responded with, "I would like you to put me on the Do-Not-Call list. Do not call me anymore. This is on record. Bye-bye."

48. DNC Request #12: January 7, 2025, at 1:05 PM, Plaintiff received a phone call from a female agent from Health Advisors. Plaintiff responded with, "Can you take my name off the list. And do not call me anymore."

49. DNC Request #13: January 7, 2025, at 1:36 PM, Plaintiff received a phone call from "Leslie" from Health Advisors. Plaintiff responded with, "Can you place my phone on the Do-Not-Call list."

50. DNC Request #14: On January 7, 2025, at 3:39 PM, Plaintiff received a phone call from "Nicole" from Health Advisors. Plaintiff responded with, "Ma'am I have asked them numerous times to put me on your Do-Not-Call list. And now I am going to take legal action."

51. DNC Request #15: On January 8, 2025, at 4:53 PM, Plaintiff received a phone call from "Ellen" from Health Advisors. Plaintiff responded with, "I would like you to, once again, do not call me again and to put me on the Do-Not-Call list, and I will be taking legal action if you guys call again."

52. DNC Request #16: On January 8, 2025, at 5:17 PM, Plaintiff received a phone call from "Jess" from Health Advisors. Plaintiff responded with, "Could you please put me on the Do-Not-Call list."

53. DNC Request #17: On January 9, 2025, at 9:44 AM, Plaintiff received a phone call from "Ana" from Health Advisors. Plaintiff responded with, "Before you give me information, please stop calling me and put me on the Do-Not-Call list. You are violating a federal act. This phone call is being recorded."

54. DNC Request #18: On January 9, 2025, at 2:33 PM, Plaintiff received a phone call from "Tisha" from Health Advisors. Plaintiff responded with, "I am requesting that you put me on your Do-Not-Call list." Mrs. Tisha replied with, "Yes sir. I can do that for you."

55. DNC Request #19: On January 9, 2025, at 4:33 PM, Plaintiff received a phone call a male agent from Health Advisors. Plaintiff responded with, "Before we get any further, I would like to be put on the Do-Not-Call list. Do not call me anymore."

56. DNC Request #20: On January 9, 2025, at 5:32 PM, Plaintiff received a phone call from "Antonio" from Health Advisors. Plaintiff made a DNC request.

57. DNC Request #21: On January 9, 2025, at 5:41 PM, Plaintiff received a phone call from "Tisha" from Health Advisors. Plaintiff responded with, "No, no, no, please listen. I want you to understand this call is being recorded and I am asking you to never call me again."

58. DNC Request #22: On January 9, 2025, at 5:49 PM, Plaintiff received a phone call from "AJ" from Health Advisors. Plaintiff responded with, "Hey listen, I have a Class Action lawsuit getting ready to be filed because I keep telling y'all to not call and put me on your do not call list. And this phone call is being recorded, and your phone call is being recorded. So, when I file these charges, this phone call will be included. Do not call me anymore."

59. DNC Request #23: On January 10, 2025, at 12:00 PM, Plaintiff received a phone call from "Amera" from Health Advisors. Plaintiff responded with, "Please out me on the do not call list. Please put me on the do not call list."

60. DNC Request #24: On January 10, 2025, at 2:51 PM, Plaintiff received a phone call from "Alexa" from Health Advisors. Plaintiff responded with, "Well if you don't mind, please put me on the Do-Not-Call list. I do not want to receive anymore phone calls from you guys."

61. DNC Request #25: On January 10, 2025, at 4:04 PM, Plaintiff received a phone call from "Michael" from Health Advisors. Plaintiff responded with, "I would just like you to put me on the Do-Not-Call list. And don't call me again please."

62. DNC Request #26: On January 10, 2025, at 4:05 PM, Plaintiff received a phone call from "John" from Health Advisors. Plaintiff responded with, "No, could you put me on the Do-Not-Call list."

63. DNC Request #27: On January 13, 2025, at 10:02 AM, Plaintiff received a phone call from "Erick" from Health Advisors. Plaintiff responded with, "I was wondering if I can speak to someone who can put me on your Do-Not-Call list."

64. DNC Request #28: On February 3, 2025, at 3:31 PM, Plaintiff received a phone call from "Ella" from Health Advisors. Plaintiff responded with, "I would like to be put on the Do-Not-Call list. The Do-Not-Call list. And I would like confirmation to my email that I have been put on the Do-Not-Call list."

65. Table A shows the calls sent to Plaintiff by Defendants.

TABLE A:

| #: | Date: | Time: | Caller ID: | Note: |
|---|---|---|---|---|
| **1.** | 12/13/2024 | 1:10 PM | 773-906-9552 | Pre-recorded message |

| | | | | |
|---|---|---|---|---|
| **2.** | 12/23/2024 | 12:28 PM | 833-867-3774 | Prerecorded message—Called back #833-867-3774 |
| **3.** | 12/23/2024 | 12:40 PM | 469-991-8461 | Live Call |
| **4.** | 12/23/2024 | 1:04 PM | 469-991-8465 | DNC Request |
| **5.** | 12/23/2024 | 1:08 PM | 469-991-8465 | DNC Request |
| **6.** | 12/23/2024 | 3:20 PM | 469-991-8481 | DNC Request |
| **7.** | 12/23/2024 | 3:29 PM | 469-991-8481 | DNC Request |
| **8.** | 12/23/2024 | 5:25 PM | 319-305-3011 | DNC Request |
| **9.** | 12/26/2024 | 5:00 PM | 469-991-8460 | DNC Request |
| **10.** | 12/26/2024 | 5:35 PM | 469-991-8497 | DNC Request |
| **11.** | 12/26/2024 | 5:38 PM | 469-991-8471 | DNC Request |
| **12.** | 12/26/2024 | 5:49 PM | 469-991-8486 | DNC Request |
| **13.** | 12/27/2024 | 10:53 AM | 469-991-8452 | DNC Request |
| **14.** | 01/02/2025 | 10:40 AM | 801-640-7900 | Prerecorded message—Called back #833-867-3774 |
| **15.** | 01/03/2025 | 12:48 PM | 469-991-8454 | DNC Request |
| **16.** | 01/03/2025 | 1:47 PM | 424-966-6026 | Prerecorded message—Called back #833-867-3774 |
| **17.** | 01/03/2025 | 2:00 PM | 984-207-9409 | Prerecorded message—Called back #833-867-3774 |
| **18.** | 01/07/2025 | 1:05 PM | 314-816-1765 | DNC Request |
| **19.** | 01/07/2025 | 1:36 PM | 419-780-3492 | DNC Request |
| **20.** | 01/07/2025 | 3:39 PM | 469-991-8505 | DNC Request |
| **21.** | 01/08/2025 | 4:53 PM | 469-991-8507 | DNC Request |
| **22.** | 01/08/2025 | 5:17 PM | 469-991-8504 | DNC Request |
| **23.** | 01/09/2025 | 9:44 AM | 469-991-8486 | DNC Request |
| **24.** | 01/09/2025 | 2:33 PM | 682-342-2570 | DNC Request |

| | | | | |
|---|---|---|---|---|
| **25.** | 01/09/2025 | 4:33 PM | 469-991-8464 | DNC Request |
| **26.** | 01/09/2025 | 5:32 PM | 469-991-8474 | DNC Request |
| **27.** | 01/09/2025 | 5:41 PM | 469-991-8510 | DNC Request |
| **28.** | 01/09/2025 | 5:49 PM | 469-991-8495 | DNC Request |
| **29.** | 01/10/2025 | 12:00 PM | 469-991-8475 | DNC Request |
| **30.** | 01/10/2025 | 2:51 PM | 469-991-8463 | DNC Request |
| **31.** | 01/10/2025 | 4:04 PM | 469-991-8463 | DNC Request |
| **32.** | 01/10/2025 | 4:05 PM | 469-991-8464 | DNC Request |
| **33.** | 01/13/2025 | 10:02 AM | 469-991-8479 | DNC Request |
| **34.** | 01/27/2025 | 1:42 PM | 916-977-9914 | Prerecorded message—Called back #833-867-3774 |
| **35.** | 01/27/2025 | 11:05 PM | 740-999-7154 | Prerecorded message—Called back #833-867-3774 |
| **36.** | 01/30/2025 | 12:36 PM | 608-946-3551 | Prerecorded message—Called back #833-867-3774 |
| **37.** | 02/03/2025 | 3:31 PM | 214-833-4577 | DNC Request |

66. Plaintiff did not have a preexisting relationship with Defendants, and Defendants had no reason to have Plaintiff's phone number.

67. Defendants placed multiple unauthorized calls to Plaintiff within a twelve-month period to Plaintiff's residential phone line after Plaintiff delivered 28 DNC requests, which violated 47 U.S.C. § 227(c) and 47 C.F.R. § 64.1200(c).

68. Defendants knew or should have known that its conduct would violate the TCPA and its implementing regulations because Plaintiff delivered at least 28 DNC requests to Defendant.

69. Defendants knew or should have known the requirements for making TCPA sales-compliant telemarketing calls and thus knew or should have known that the unauthorized telemarketing calls and the many disregarded DNC requests complained of herein violated the

TCPA and all of its regulations.

70. Defendants' unregistered phone calls caused Plaintiff to become aggravated, and annoyed and resulted in Plaintiff having to spend hours attempting to uncover the identity of the anonymous telemarketers.

71. Plaintiff is a Texas resident and was located in Texas during all calls at issue in this Complaint.

72. Plaintiff maintains a telephone number with a 214 Dallas, Texas area code.

73. No emergency necessitated any of these calls.

74. Each of the phone calls at issue in this Complaint was a solicitation phone call.

**MR. TOBIAS IS PERSONALLY LIABLE FOR THE PHONE CALLS**

75. Defendant Tobias is personally liable for all calls made to Plaintiff on behalf of Defendant GMHC as they personally directed the phone calls to be made.

76. Defendant Tobias collectively wrote the scripts the agents used on said calls described herein and trained the agents on live calls and on the usage of the scripts with potential customers.

77. Defendant Tobias directed the telephone solicitors on which states to call and during which hours to call.

78. Defendant Tobias knowingly and willfully violates the TCPA regulations and do so because it benefits them and their companies.

79. Defendant Tobias directly ordered his agents to ignore the Do-Not-Call requests and did not train his agents on how to use an internal DNC list or an internal DNC registry.

80. Defendant Tobias purchased the equipment used to make the pre-recorded phone calls contained in this Complaint.

81. Defendant Tobias instructed the sales agents on how to use the equipment used to make the

pre-recorded phone calls contained in this Complaint.

82. Mr. Tobias is the namesake of the Defendant GMHC and the sole owner, operator, and decision maker of Defendant GMHC.

83. There is precedent in the Western District for holding corporate officers personally liable when they participate in the alleged actions:

> "If the officer directly participated in or authorized the statutory violation, even though acting on behalf of the corporation, he may be personally liable. See *United States v Pollution Serv. Of Oswego, Inc.*, 763 F.2d 133, 134-135 (2nd Cir.1985).
>
> The "well-settled" tort rule provides that "when corporate officers directly participate in or authorized the commission of a wrongful act, even if the act is done on behalf of the corporation, they may be personally liable." *General Motos Acceptance Corp. v. Bates*, 954 F.2d 1081, 1085 (5th Cir. 1992). The Fifth Circuit has elaborated that "the thrust of the general [tort] rule is that the officer to be held personally liable must have some direct, personal participation in the tort, as where the defendant was the 'guiding spirit' behind the wrongful conduct….or the 'central figure' in the challenged corporate activity." *Mozingo v. Correct Mfg. Corp.*, 752 F.2d 168, 174 (5th Cirt. 1985) (Citing *Escude Cruz v. Ortho Pharmaceutical Corp.*, 619 F. 2d 902, 907 (1st Cir.1980)) (Citing *Texas v. American Blastfax, Inc.*, 164 F. Supp. 2d 892 (W.D. Tex. 2001)
>
> Quoting Texas v. American Blastfax:
>
> The Court finds the above principles applicable to the TCPA that is, an officer may be personally liable under the TCPA if he had direct, personal participation in or personally authorized the conduct found to have violated the statute, and was not merely tangentially involved. Individuals who directly (and here, knowingly and willfully) violate the TCPA should not escape liability solely because they are corporate officers. As the State persuasive argues, to hold otherwise would allow the individual defendants to simply dissolve Blastfax, set-up a new shell corporation, and repeat their conduct. Congress surely did not intend to permit such a result in passing the TCPA.
>
> To be clear, the Court finds Greg and Michael Horne were the "guiding spirits" an the "central figures" behind the TCPA violations. They were the two persons who controlled all of Blastfax's day-to-day operations. They both had direct, personal involvement in and ultimate control over every aspect of Blastfax's wrongful conduct that violate the TCPA, and/or directly controlled and authorized this conduct. And they did so with their eyes and pocketbooks wide open. After October 5, 2000, Greg and Michael Horne had good reason to believe they were running a business that violated the TCPA. On February 9, 2001, they knew they were. Yet they continued to direct their company to send unsolicited intrastate fax advertisements. This is far more than a simple derivative

> liability case. Accordingly, the Court *899 holds defendants Greg and Michael Horne are jointly and severally liable with Defendant Blastfax, Inc., for all TCPA damages in this lawsuit." Texas v. American Blastfax, Inc., 164 F. Supp. 2d 892 (W.D. Tex. 2001).

84. The Same Court held that corporate officers were also personally liable for DTPA violations;

> The State contends Greg and Michael Horne are personally liable for any DTPA damages because they were solely responsible for the violating conduct.....For the same reasons discussed in finding the individual defendants personally liable under the TCPA, the Court agrees. See, e.g., *Barclay v. Johnson*, 686 S.W.2d 334, 336-37 (Tex. Civ. App.-Houston [1ST Dist.] 1985, no writ) (finding personal liability for corporate officer in DTPA misrepresentation claim, based on general rule that "a corporate agent knowingly participating in a tortious of fraudulent act may be held individually liable, even though he performed the act as an agent for the corporation......Accordingly, the Court finds defendants American Blastfax, Inc., Greg Horne and Michael Horne are jointly and severally liable for $6,000 in damages for their violations of the DTPA." *Texas v. American Blastfax, Inc.*, 164 F. Supp. 2d 892 (W.D. Tex. 2001).

85. Defendant Tobias is the mastermind who schemed, planned, directed, initiated, and controlled illegal and fraudulent behavior.

86. Defendant Tobias is well aware the conduct violated the TCPA, refused to alter the behavior, and did nothing to make the unlawful, fraudulent, and unethical behavior he directed stop.

## INJURY, HARM, DAMAGES, AND ACTUAL DAMAGES AS A RESULT OF THE CALLS

87. Defendants' calls harmed Plaintiff by causing the very harm that Congress sought to prevent—a "nuisance and invasion of privacy."

88. Defendants' calls harmed Plaintiff by trespassing upon and interfering with Plaintiff's rights and interests in Plaintiff's cellular telephone.

89. Defendants' calls harmed Plaintiff by intruding upon Plaintiff's seclusion.

90. Plaintiff has been harmed, injured, and damaged by the calls including, but not limited to:

reduced device storage, reduced data plan usage, anger, frustration, invasion of privacy, and more frequent charging of his cell phone.

**PLAINTIFF'S CELL PHONE IS A RESIDENTIAL NUMBER**

91. The calls to Plaintiff's personal cell phone that he uses for personal, family, and household use. Plaintiff maintains no landline phones at his residence and primarily relies on cellular phones to communicate with friends and family. Plaintiff also uses his cell phone for navigation purposes, sending and receiving emails, timing food when cooking, and sending and receiving text messages. Plaintiff further has his cell phone registered in his personal name, pays for the cell phone from his personal accounts, and the phone is not primarily used for any business purpose.

**COUNT ONE:**

**(Violation of the TCPA "Sales Call/DNC" Prohibition, 47 U.S.C. 227(c), and 47 C.F.R. § 64.1200(C))**

92. Plaintiff incorporates the preceding paragraphs 1-91 as if fully set forth herein.

93. The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute a violation of FCC regulations by making multiple telemarketing solicitations to a consumer on the National Do-Not-Call Registry within a 12-month period in violation of 47 C.F.R. § 64.1200(c)(2).

94. Defendants sent thirty-five (35) calls to Plaintiff's private residential telephone number which was successfully registered on the National Do-Not-Call Registry more than thirty-one (31) days prior to the calls, in violation of 47 U.S.C § 227(c)(3)(F), and 47 C.F.R. § 64.1200(c)(2).

95. Plaintiff was statutorily damaged at least thirty-five (35) times under 47 U.S.C. § 227(c)(3)(F) by Defendants by the unauthorized calls described above, in the amount of $500 per

call.

96. Plaintiff is entitled to an award of at least $500 in damages for each such violation, 47 U.S.C. § 227(c)(5)(B).

97. Plaintiff is entitled to an award up to $1,500 in damages for each knowing or willful violation of 47 U.S.C. § 227(c)(3)(F).

**COUNT TWO:**

**(Violations of TCPA "Artificial or Prerecorded Voice" 47 U.S.C. 227(b))**

98. Plaintiff incorporates the preceding paragraphs 1-97 as if fully set forth herein. Defendants and/or their agents placed eight (8) prerecorded phone calls to Plaintiff's cellular telephone.

99. Plaintiff never consented to receive prerecorded phone calls from Defendants. Plaintiff had no relationship with Defendants.

100. Defendants' pre-recorded phone calls were made for the purposes of advertising and marketing their goods and services. These prerecorded constituted commercial advertising and telemarketing as contemplated by the TCPA.

101. The prerecorded phone calls were made using prerecorded messages to the cellular phone of Plaintiff in violation of 47 U.S.C. § 227(b)(1)(A)(iii) and (B).

102. As a result of their unlawful conduct, Defendants repeatedly invaded the personal privacy of Plaintiff, causing Plaintiff to suffer damages and, under 47 U.S.C. § 227(b)(3)(B), entitling Plaintiff to recover $500 in statutory damages for each violation and an injunction requiring Defendants to stop their unlawful prerecorded calling campaigns.

103. Not only did Defendants make these violating prerecorded phone calls, but Defendants and/or their agents also did so "knowingly" and/or "willfully' under 47 U.S.C. § 227 (b)(3)(C).

104. If the Court finds that Defendants willfully or knowingly violated this subsection, the Court may exercise its discretion to increase the amount of the award from $500 to $1500 per violation under 47 U.S.C. § 227(b)(3)(C).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Adean Hill prays for judgment against the Defendants as follows:

A. Leave to amend this Complaint to name additional DOESs as they are identified and to conform to the evidence presented at trial;

B. A declaration that actions complained of herein by Defendants violated the TCPA.

C. An injunction enjoining Defendants and their affiliates and agents from engaging in the unlawful conduct set forth herein;

D. An award of $1500 per call in statutory damages arising from the TCPA §227(b) intentional knowing and willful violations jointly and severally against the corporation and individual for eight (8) calls

E. An award of $1500 per call in statutory damages arising from the TCPA §227(c) intentional knowing and willful violations jointly and severally against the corporation and individual for thirty-five (35) calls.

F. An award to Mr. Hill of damages, as allowed by law under the TCPA;

G. An award to Mr. Hill of interest, costs, and attorneys' fees, as allowed by law and equity.

H. Such further relief as the Court deems necessary, just, and proper.

February 7, 2025,

Respectfully submitted,

Adean Hill Jr
Plaintiff, Pro Se
6513 White Oak Dr.
Rowlett, Texas 75089
214-309-6388
adeanhilljr@gmail.com

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury on all claims so triable.

February 7, 2025,

Respectfully submitted,

Adean Hill Jr
Plaintiff, Pro Se
6513 White Oak Dr.
Rowlett, Texas 75089
214-309-6388
adeanhilljr@gmail.com

JS 44 (Rev. 03/24)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

**I. (a) PLAINTIFFS**
ADEAN HILL JR.

**DEFENDANTS**
TOBIAS & ASSOCIATES et al

**(b)** County of Residence of First Listed Plaintiff: Ellis
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant: Palm Beach
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Attorneys *(If Known)*

RECEIVED
FEB - 7 2025
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

3-25CV0307-D

**II. BASIS OF JURISDICTION** *(Place an "X" in One Box Only)*

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question *(U.S. Government Not a Party)*
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

**III. CITIZENSHIP OF PRINCIPAL PARTIES** *(Place an "X" in One Box for Plaintiff and One Box for Defendant)* *(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** *(Place an "X" in One Box Only)* Click here for: Nature of Suit Code Descriptions.

**CONTRACT**
- ☐ 110 Insurance
- ☐ 120 Marine
- ☐ 130 Miller Act
- ☐ 140 Negotiable Instrument
- ☐ 150 Recovery of Overpayment & Enforcement of Judgment
- ☐ 151 Medicare Act
- ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans)
- ☐ 153 Recovery of Overpayment of Veteran's Benefits
- ☐ 160 Stockholders' Suits
- ☐ 190 Other Contract
- ☐ 195 Contract Product Liability
- ☐ 196 Franchise

**REAL PROPERTY**
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

**TORTS**

PERSONAL INJURY
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers' Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury
- ☐ 362 Personal Injury - Medical Malpractice

PERSONAL INJURY
- ☐ 365 Personal Injury - Product Liability
- ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability
- ☐ 368 Asbestos Personal Injury Product Liability

PERSONAL PROPERTY
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

**CIVIL RIGHTS**
- ☐ 440 Other Civil Rights
- ☐ 441 Voting
- ☐ 442 Employment
- ☐ 443 Housing/ Accommodations
- ☐ 445 Amer. w/Disabilities - Employment
- ☐ 446 Amer. w/Disabilities - Other
- ☐ 448 Education

**PRISONER PETITIONS**

Habeas Corpus:
- ☐ 463 Alien Detainee
- ☐ 510 Motions to Vacate Sentence
- ☐ 530 General
- ☐ 535 Death Penalty

Other:
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition
- ☐ 560 Civil Detainee - Conditions of Confinement

**FORFEITURE/PENALTY**
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 690 Other

**LABOR**
- ☐ 710 Fair Labor Standards Act
- ☐ 720 Labor/Management Relations
- ☐ 740 Railway Labor Act
- ☐ 751 Family and Medical Leave Act
- ☐ 790 Other Labor Litigation
- ☐ 791 Employee Retirement Income Security Act

**IMMIGRATION**
- ☐ 462 Naturalization Application
- ☐ 465 Other Immigration Actions

**BANKRUPTCY**
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

**INTELLECTUAL PROPERTY RIGHTS**
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 835 Patent - Abbreviated New Drug Application
- ☐ 840 Trademark
- ☐ 880 Defend Trade Secrets Act of 2016

**SOCIAL SECURITY**
- ☐ 861 HIA (1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g))
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g))

**FEDERAL TAX SUITS**
- ☐ 870 Taxes (U.S. Plaintiff or Defendant)
- ☐ 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
- ☐ 375 False Claims Act
- ☐ 376 Qui Tam (31 USC 3729(a))
- ☐ 400 State Reapportionment
- ☐ 410 Antitrust
- ☐ 430 Banks and Banking
- ☐ 450 Commerce
- ☐ 460 Deportation
- ☐ 470 Racketeer Influenced and Corrupt Organizations
- ☐ 480 Consumer Credit (15 USC 1681 or 1692)
- ☒ 485 Telephone Consumer Protection Act
- ☐ 490 Cable/Sat TV
- ☐ 850 Securities/Commodities/ Exchange
- ☐ 890 Other Statutory Actions
- ☐ 891 Agricultural Acts
- ☐ 893 Environmental Matters
- ☐ 895 Freedom of Information Act
- ☐ 896 Arbitration
- ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision
- ☐ 950 Constitutionality of State Statutes

**V. ORIGIN** *(Place an "X" in One Box Only)*

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation - Transfer
- ☐ 8 Multidistrict Litigation - Direct File

**VI. CAUSE OF ACTION**

Cite the U.S. Civil Statute under which you are filing ***(Do not cite jurisdictional statutes unless diversity)***:
47 USC Section 227

Brief description of cause:
Violation of the TCPA

**VII. REQUESTED IN COMPLAINT:**
☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.
**DEMAND $** 64,500
CHECK YES only if demanded in complaint:
**JURY DEMAND:** ☐ Yes ☒ No

**VIII. RELATED CASE(S) IF ANY** *(See instructions)*:
JUDGE ______ DOCKET NUMBER ______

DATE
02/07/2025

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # ______ AMOUNT ______ APPLYING IFP ______ JUDGE ______ MAG. JUDGE ______

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.(a) Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

**(b) County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

**(c) Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II. Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; **NOTE: federal question actions take precedence over diversity cases.**)

**III. Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV. Nature of Suit.** Place an "X" in the appropriate box. If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable. Click here for: Nature of Suit Code Descriptions.

**V. Origin.** Place an "X" in one of the seven boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File. (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.
**PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.** Origin Code 7 was used for historical records and is no longer relevant due to changes in statute.

**VI. Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service.

**VII. Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII. Related Cases.** This section of the JS 44 is used to reference related cases, if any. If there are related cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.